**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| EMILY SCOTT, DENISE MILANI, IESHA MARIE CRESPO, MONICA LEIGH BURKHARDT, PAIGE HATHAWAY, ROSA ACOSTA, ABIGAIL RATCHFORD, ALANA SOUZA a/k/a ALANA CAMPOS, ANDRA "ANA" CHERI MORELAND, BRENDA GEIGER, CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, JESSICA "JESSA" HINTON, LUCY PINDER, PAOLA CANAS, JESSICA BURCIAGA, SANDRA VALENCIA, JESSICA "CHARM" KILLINGS, SARA UNDERWOOD, and BROOKE MARRIN a/k/a BROOKE BANX | Case No.: 8:22-cv-1812 |
| Plaintiffs, | |
| v. | |
| | JURY TRIAL DEMANDED |
| J.F.J. INC. d/b/a MEXICO LINDO RESTAURANT & BAR a/k/a MEXICO LINDO DE MARYLAND MXL NIGHT CLUB a/k/a MEXICO LINDO MXL NIGHT CLUB | |
| and | |
| JULIAN JUAN-MIGUEL | |
| Defendants. | |

**COMPLAINT**

Plaintiffs, EMILY SCOTT, DENISE MILANI, IESHA MARIE CRESPO, MONICA

LEIGH BURKHARDT, PAIGE HATHAWAY, ROSA ACOSTA, ABIGAIL RATCHFORD,

ALANA SOUZA a/k/a ALANA CAMPOS, ANDRA "ANA" CHERI MORELAND, BRENDA

GEIGER, CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, JESSICA "JESSA"

- 1 -

HINTON, LUCY PINDER, PAOLA CANAS, JESSICA BURCIAGA, SANDRA VALENCIA, JESSICA "CHARM" KILLINGS, SARA UNDERWOOD, and BROOKE MARRIN a/k/a BROOKE BANX (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against Defendants J.F.J. INC. and JULIAN JUAN-MIGUEL (collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Mexico Lindo Restaurant & Bar also known as Mexico Lindo de Maryland MXL Night Club also known as Mexico Lindo MXL Night Club located in Bladensburg, Maryland ("MXL" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of each Plaintiff's common law right of publicity; d) violation of Maryland's Consumer Protection Act, Md. Commercial Law Code Ann. § 13-301; and e) various common law torts, including conversion.

3.      In addition to the actual, punitive, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

- 2 -

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, Defendant J.F.J. Inc. is a corporation formed under the laws of the state of Maryland, with its principal place of business located at 5652 Annapolis Road, Bladensburg, Maryland 20710. J.F.J. Inc. operates Mexico Lindo Restaurant MD also known as Mexico Lindo de Maryland MXL Nightclub also known as MXL which is located at 5652 Annapolis Road, Bladensburg, Maryland 20710.

7.      Venue is proper in the United States District Court for the District of Maryland because Bladensburg, Maryland is Defendants' principal place of business.

8.      A significant portion of the alleged causes of action arose and accrued in Bladensburg, Maryland, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bladensburg, Maryland.

## PARTIES

*Plaintiffs*

9.      Plaintiff Emily Scott ("Scott") is a well-known professional model, and a resident of Australia.

10.     Plaintiff Denise Milani a/k/a Denise Trlica ("Milani") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Iesha Marie Crespo ("Crespo") is a well-known professional model, and

a resident of Miami-Dade County, California.

12.     Plaintiff Monica Leigh Burkhardt ("Burkhardt") is a well-known professional model, and a resident of Suffolk County, New York.

13.     Plaintiff Paige Hathaway ("Hathaway") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Abigail Ratchford ("Ratchford") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Alana Souza a/k/a Alana Campos ("Campos") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Andra Moreland a/k/a Ana Cheri ("Cheri") is a well-known professional model, and a resident of Orange County, California.

18.     Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

19.     Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

21.     Plaintiff Jessica "Jessa" Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

22.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of England.

23.     Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

24.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

25.     Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Medellin, Colombia.

26.     Plaintiff Jessica "Charm" Killings ("Killings") is a well-known professional model, and a resident of Los Angeles County, California.

27.     Plaintiff Sara Underwood ("Underwood") is a well-known professional model, and a resident of Multnomah County, Oregon.

28.     Plaintiff Brooke Marrin a/k/a Brooke Banx ("Banx") is a well-known professional model, and a resident of Travis County, Texas.

*Defendants*

29.     According to publicly available records, Defendant J.F.J. Inc. is formed under the laws of the state of Maryland.  During times relevant to this action, J.F.J. Inc. operated Mexico Lindo Restaurant & Bar also known as Mexico Lindo de Maryland MXL Night Club also known as Mexico Lindo MXL Night Club (collectively "MXL") in Bladensburg, Maryland.

30.     According to publicly available records, and upon information and belief, Julian Juan-Miguel in his capacity as principal, owner and/or CEO of J.F.J. Inc. maintained operational control over MXL, including all advertising relating thereto.

**FACTUAL ALLEGATIONS**

31.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines, and

- 5 -

individuals for the purpose of advertising products and services.

32.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

33.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with MXL.

34.     In the case of every Plaintiff, such appearance was false.

35.     Moreover, in every case, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

36.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

### *Plaintiffs' Backgrounds and Careers*

37.     Scott is and at all times relevant to this action was, an Australian DJ and model based in Sydney and London. She's been voted by multiple magazines in the United States, United Kingdom, and Australia as one of the world's sexiest women. Scott has graced over 30 covers for publications such as Maxim, FHM, and 10 features for Playboy editions throughout

Europe. She's appeared in campaigns for Wonderbra, Lipton Iced Tea, and was featured in Robbie William's show visuals to support his worldwide Rock DJ tour, following the Robbie William's show Scott was cast in US hit 'Entourage'; for an episode in series 4. She has been a contestant on 'Dancing With The Stars Australia', 'I'm A Celebrity Get Me Out Of Here' UK, 'Cirque Du Celebrity' UK and 'Love Island' UK. Scott kicked off her first DJ tour in 2008. Since then she has played support slots for legendary House DJ Erick Morillo, Defected's Sam Divine and at festivals alongside Deadmau5, Tommy Sunshine, and Skrillex. Scott has mixed high profile compilations for major record labels such as EMI and headlined tours in many corners of the world. After her extensive 10 city tour across South East Asia Scott was chosen to shoot the cover of FHM Malaysia's March 2015 edition as Australia's hottest export.

38.     That we know of, Scott is depicted in the photos in Exhibit "A" to promote MXL on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Scott was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

39.     Scott has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Milani is the world's most famous pinup model, who is frequently named one of the most searched women on the internet. At one point, her self-titled website was the most popular model website in the world. Milani also became the winner of Miss Bikini World 2007. At 21, Milani was given an opportunity to model for SPORTSbyBROOKS as a sports model and posed for such publications as PinupFiles.com. In 2009, Milani was selected as the 99th most

desired woman in the world by Askmen Magazine. In 2011, she was ranked in the 5th position in championship NPC Excalibur Bikini held in Culver City, California. Similarly, in the year 2013, she was one of ten (10) most desirable women in the world. Milani's social media reach has hit over 660 thousand followers on Instagram, 6 million Facebook likes, and over 126 thousand followers on Twitter.

41.     That we know of, Milani is depicted in the photos in Exhibit "B" to promote MXL on its Instagram page. These Images were intentionally altered to make it appear that Milani was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

42.     Milani has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43.     Crespo is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of Models Latina March 2015 and Shock magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

44.     That we know of, Crespo is depicted in the photos in Exhibit "C" to promote MXL on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Crespo was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

45.     Crespo has never been employed at MXL, has never been hired to endorse MXL,

has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.     Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow Playboy Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions (she was featured on the cover of "Playboy's College Girls" in September, 2005). She was the Playboy Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Burkhardt was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of Playboy and graced the cover of the August, 2006 issue. Burkhardt has appeared in several Playboy videos and on a handful of episodes of the reality TV series, The Girls Next Door (2005). She has acting roles in the movies, The Duel (2006), The Pool Boys (2009), The Gentleman (2007) and Road Raiders (2000). Monica has popped up as an extra not only in Spider-Man 3 (2007), but also on episodes of both Entourage (2004) and CSI: Miami (2002).

47.     That we know of, Burkhardt is depicted in the photos in Exhibit "D" to promote MXL on its Facebook page. These Images were intentionally altered to make it appear that Burkhardt was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

48.     Burkhardt has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.     Hathaway is an American model, spokeswoman, business owner, and social media superstar. Hathaway was ranked second at the 2012 Ronnie Coleman Classic, the biggest NPC statewide competition in the United States. The following year, she was named the FLEX August 2013 Bikini Model Search Winner. Hathaway has graced the covers of many prestigious magazines, such as Fitness Gurls, Women's Health and Fitness, Oxygen, Inside Fitness, MOST, Livid Magazine, Muscular Development, Dakini Magazine, and many more. She endorsed Shredz for three years and participated in the BodyPower UK Expo 2013 as part of the Gymshark team. Hathaway has her own membership program available on her website and also provides separate personalized diet and workout regimes for subscribers. She has become a huge name in fitness largely thanks to her social media presence. Hathaway was the latest ambassador for F45 Training, a global fitness franchise. She has a combined 9,923,695 fans on Facebook, Instagram, Twitter, and YouTube.

50.     That we know of, Hathaway is depicted in the photos in Exhibit "E" to promote MXL on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Hathaway was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

51.     Hathaway has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52.     Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating

with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 38 thousand Facebook followers, over 1.6 million Instagram followers, and over 280.6 thousand Twitter followers.

53.     That we know of, Acosta is depicted in the photos in Exhibit "F" to promote MXL on its Facebook page. These Images were intentionally altered to make it appear that Acosta was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

54.     Acosta has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55.     Ratchford, born in Pennsylvania, is an American model and aspiring actress known for taking the Internet by storm in 2013. Ratchford's deft use of social media, combined with the provocative pictures showcasing the brunette's 36DD-24-36 frame, proved a winning combination. This formula helped land her on numerous men's websites, a six-page print spread in a popular Australian men's magazine, and also led to her being selected to audition for parts in

Maxim, a feature film, and television shows found on ABC and E! Networks. She has over 9.1 million followers on Instagram, over 4.1 million followers of Facebook, and over 1 million followers on Twitter.

56. That we know of, Ratchford is depicted in the photos in Exhibit "G" to promote MXL on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Ratchford was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

57. Ratchford has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

58. Campos is a Brazilian model who started working at the age of 15. Campos was scouted by the director of Ford Models, which remained her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at 20 and is currently represented by Wilhelmina Models. Campos has been published in *Playboy*, *Astonish*, *Viva Glam*, and *Bliss* magazines. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for *Arizona Foothills Magazine*. In addition, Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

59. That we know of, Campos is depicted in the photos in Exhibit "H" to promote MXL on its Instagram page. These Images were intentionally altered to make it appear that

Campos was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

60.     Campos has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

61.     Cheri is a published model who has worked with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz, was featured as a *Maxim* Instagram Girl of the Week. She is also *Playboy's* October 2015 Playmate of the Month. Ana has over 12.4 million followers on Instagram, over 230 thousand followers on Twitter, and over 6.2 million followers on Facebook.

62.     That we know of, Cheri is depicted in the photos in Exhibit "I" to promote MXL on its Instagram page. These Images were intentionally altered to make it appear that Cheri was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

63.     Cheri has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

64.     Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous

magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

65.     That we know of, Geiger is depicted in the photos in Exhibit "J" to promote MXL on its Instagram page. These Images were intentionally altered to make it appear that Geiger was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

66.     Geiger has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

67.     Gibson is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM*, *American Curves*, *Supreme*, *MuscleMag International, Muscle & Fitness,* and *Teeze,* Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

68.     That we know of, Gibson is depicted in the photos in Exhibit "K" to promote MXL on its Facebook page. These Images were intentionally altered to make it appear that Gibson was either an entertainer working at MXL, that she endorsed the Club, or that she was

otherwise associated or affiliated with the Club.

69.     Gibson has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

70.     Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, magazine editorials and has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Sampedro is engaged to and has a child with Green Bay's star defensive end Julius Peppers.

71.     That we know of, Sampedro is depicted in the photos in Exhibit "L" to promote MXL on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Sampedro was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

72.     Sampedro has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

73.     Hinton was first introduced to the modeling industry at age fourteen when she was discovered by a talent manager at a wedding. She immediately booked three national TV

commercials and guest appeared on *Baywatch* and *7th Heaven* by the age of sixteen. At the age of eighteen, she began working runway shows and doing print campaigns. In 2010, Ms. Hinton became the face of the *Palms Hotel & Casino's 2010* ad campaign. She then expanded to TV personality roles having hosted for *Victory Poker*, and as an interview personality for the *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Ms. Hinton also gained spokes model roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, *Protein World* and ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images appeared on billboards, magazines, posters, and multiple forms of electronic media. Ms. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was recently named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Ms. Hinton has also earned an elite status as a social media celebrity crossing over the 1 million follower benchmark on Instagram, 872,000 followers on Twitter, and 181,000 followers on Twitter.

74. That we know of, Hinton is depicted in the photos in Exhibit "M" to promote MXL on its Instagram page. These Images were intentionally altered to make it appear that Hinton was either an entertainer working at MXL that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

75. Hinton has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for

Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

76.    Pinder is, and at all times relevant to this action was, one of Great Britain's most famous glamour models, an actress, host, and businesswoman. She has been featured in publications such as *FHM, Nuts, Loaded, The Daily Star,* and hundreds of others. Pinder appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others. Pinder has an established acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, Team and Bo!* in the USA; and was also a contestant on *Celebrity Big Brother*. Pinder starred in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder works closely with several wildlife charities and is involved in fundraising for *Tiger Time*, *The David Shepherd Wildlife Foundation*, and *International Animal Rescue.* Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and also visited troops in Afghanistan in 2007. She has supported the Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. Pinder's annual calendar continues to be one of the bestselling model calendars year after year and reinforces Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Twitter, Instagram, and Twitter.

77.    That we know of, Pinder is depicted in the photos in Exhibit "N" to promote MXL on its Facebook and Instagram pages. These Images were intentionally altered to make it

appear that Pinder was either an entertainer working at MXL that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

78.     Pinder has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

79.     Canas is a Colombian born model now residing and working in the United States. Canas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Canas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Canas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Canas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Canas has over 545 thousand Instagram followers, over 10.5 thousand followers on Twitter, and over nine thousand Facebook likes.

80.     That we know of, Canas is depicted in the photos in Exhibit "O" to promote MXL on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Canas was either an entertainer working at MXL that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

81.     Canas has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

82.     Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's* "Neighborhood Knockout" contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly, and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

83.     That we know of, Burciaga is depicted in the photos in Exhibit "P" to promote MXL on its Instagram page. These Images were intentionally altered to make it appear that Burciaga was either an entertainer working at MXL that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

84.     Burciaga has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration

for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

85.    Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico, and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Besame Lingerie. She currently has over 141 thousand Instagram followers and over 77.6 thousand Twitter followers.

86.    That we know of, Valencia is depicted in the photos in Exhibit "Q" to promote MXL on its Facebook page. These Images were intentionally altered to make it appear that Valencia was either an entertainer working at MXL that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

87.    Valencia has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

88.    Killings is a model and music video star.  She has appeared in a number of popular magazines such as *SHOW, Blackmen, Straight Stuntin, Smooth,* and *Mixed.* Killings has also appeared in several music videos as the lead talent including Far East Movement ft. Snoop Dogg's video "OMG," Slim Thug and Baby Bash's video "Swananana," Big Sean and Chris Brown's video "My Last," Bow Wow's video "Pretty Lady," and Jay Sean ft. Nicki Minaj's video "2012."  Killings has 1.9 million Instagram followers and 53.1 thousand Twitter followers.

89.    That we know of, Killings is depicted in the photos in Exhibit "R" to promote

- 20 -

MXL on its Instagram page. These Images were intentionally altered to make it appear that Killings was either an entertainer working at MXL that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

90.     Killings has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

91.     Underwood first appeared in *Playboy* in the pictorial "The Girls of the Pac 10" in the October 2005 issue in which she also graced the cover. Underwood was the Playmate of the Month in the July 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many *Playboy* videos, and not only has she appeared as herself in the films *The House Bunny* (2008) and *Miss March* (2009) but also in episodes reality TV series such as Kendra (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009). Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the Show". She has over 14 million social media followers.

92.     That we know of, Underwood is depicted in the photos in Exhibit "S" to promote MXL on its Facebook page. These images were intentionally altered to make it appear that Underwood was either an entertainer working at MXL that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

93.     Underwood has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer,

damages as a result of same.

94. Banx has been featured in countless magazines, calendars, posters, catalogs, and ad campaigns nationwide. She can also be seen in music videos, films and a few reality shows, as well as hosting numerous events around the world. Banx's rise within the ranks of the entertainment industry has landed her many great opportunities with features and pictorials in countless major websites and magazines, including FHM, www.savvy.com and a recent front cover of America Curves Magazine. Banx has also just finished her biology degree and is attending medical school. She has over 29 thousand followers on Twitter, and over 186 thousand followers on Facebook.

95. That we know of, Banx is depicted in the photos in Exhibit "T" to promote MXL on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Banx was either an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

96. Banx has never been employed at MXL, has never been hired to endorse MXL, has never been otherwise associated or affiliated with MXL, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

97. Upon information and belief, Defendants operated, during the relevant time period, MXL, where they engaged in the business of selling alcohol and food in a sexually charged atmosphere.

98. Upon information and belief, and in furtherance of their promotion of MXL, Defendants own, operate and control MXL's social media accounts, including its Facebook,

Twitter, and Instagram accounts.

99. Defendants used MXL's Facebook, Twitter, and Instagram accounts to promote MXL, and to attract patrons thereto.

100. Defendants did this for their own commercial and financial benefit.

101. Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as an entertainer working at MXL, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

102. Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed MXL to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

103. As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by MXL and at no point have any of the Plaintiffs ever endorsed MXL, or otherwise been affiliated or associated with MXL.

104. All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

105. As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

*Standard Business Practices in the Modeling Industry*

106. It is common knowledge in the modeling industry that the hiring of a model for a

- 23 -

commercial purpose involves a particularized methodology and process.

107. The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiffs' Images*

108. As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote MXL by and through various marketing and promotional mediums including, without limitation, MXL's website, Twitter, Facebook, and Instagram.

109. Defendants showcased Plaintiffs' Images on MXL's social media pages to create the false impression that Plaintiffs worked at MXL, endorsed, promoted, or sponsored same, or were otherwise associated or affiliated with same.

110. Defendants did so to attract clientele to MXL, promote MXL, and thereby generate revenue for Defendants.

111. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed MXL.

112. Unauthorized use of Plaintiffs' Images deprives them of income they are owed

relating to the commercialization of their Images.

113. In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

114. At no point were any of the Plaintiffs ever affiliated with MXL or Defendants.

115. The Defendants used Plaintiffs' Images without obtaining their consent.

116. At no point was any Plaintiff ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

117. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

118. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including MXL website, Twitter, Facebook, or Instagram accounts.

119. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each Plaintiff of her right to use her Images.

120. Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

121. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

122. The provisions of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

123. As set forth hereon, each advertisement at issue in this action was false and misleading because no Plaintiff ever worked at MXL or agreed to appear in MXL's advertisements.

124. Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

125. Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended MXL.

126. Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

127. Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with the Club.

128. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

129. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

130. Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)

131. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

132. The provisions of the Lanham Act, 15 U.S.C. § 1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

- 26 -

133. Defendants used Plaintiffs' Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with MXL, or worked at, sponsored, or approved of MXL's goods, services, or commercial activities.

134. This was done to promote and attract clientele to MXL, and thereby generate revenue for the Defendants.

135. Thus, this was done in furtherance of Defendants' commercial benefit.

136. Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected, or associated with MXL, nor worked at, sponsored, or approved of MXL's goods, services or commercial activities, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with MXL.

137. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

138. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

139. Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by § 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
**(Right of Privacy)**

140. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

141.    As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Maryland law.

142.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

143.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on MXL's website or related social media accounts as part of Defendants' advertising campaign.

144.    At all relevant times, MXL's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

145.    MXL's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

146.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

147.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

148.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' Images and likenesses was altered so as to reach a new audience and/or promote a different product.

149. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for MXL.

150. At no point did any Defendants ever receive permission or consent to use any Plaintiff's Image on Defendants' website or social media account.

151. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

152. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

153. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FOURTH CAUSE OF ACTION
### (Right of Publicity)

154. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155. As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona, and likeness.

156. Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona, and likeness.

157. As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in MXL's advertising.

158. Defendants did so without any Plaintiff's consent, written, or otherwise.

159. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the

- 29 -

filing of this complaint.

160. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

161. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

162. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

163. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

### FIFTH CAUSE OF ACTION
**(Maryland's Consumer Protection Act, Md. Code Ann., Commercial Law § 13-301)**

164. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

165. Defendants operated MXL's website and social media accounts in order to promote MXL, to attract clientele thereto, and to thereby generate revenue for Defendants.

166. As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Maryland.

167. Defendants published Plaintiffs' Images on MXL's website and social media accounts in order to create the false impression that Plaintiffs were either entertainers working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club.

168. As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

169.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Maryland law.

170.    Defendants' advertising practices offend the public policy of Maryland insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images and an invasion of Plaintiffs' privacy for Defendants' commercial benefit.

171.    Defendants' advertising practices are immoral, unethical, oppressive, and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are entertainers at MXL.

172.    Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are entertainers at, endorse, or are otherwise affiliated with MXL.

173.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

174.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiff's reputations was injured, and each of the Plaintiff's ability to market herself as a model was injured.

175.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
(Negligence and *Respondeat Superior*)

176.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

177. Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

178. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

179. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

180. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

181. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

182. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Maryland law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

183.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

184.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

185.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

186.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title, and interest in their Images, and have property interests thereon.

187.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

188.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

189.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

190.    As set forth in detail above, Defendants' published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

191.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at the Club or endorsed the Club.

192.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially

due to their purported association with, employment of, and/or endorsement by Plaintiffs.

193. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

194. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Club.

195. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

196. As such, Plaintiffs have been damaged in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
#### (Quantum Meruit)

197. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

198. Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

199. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

200. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

201. Plaintiffs are therefore entitled to reasonable compensation for the Club's unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through ninth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive and/or treble damages under the Lanham Act, 15 U.S.C.§ 1117;

(d)    For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Maryland's Consumer Protection Act; and,

(e) For such other and further relief as the Court may deem just and proper

Respectfully submitted,

THE PLAINTIFFS, EMILY SCOTT, DENISE MILANI, IESHA MARIE CRESPO, MONICA LEIGH BURKHARDT, PAIGE HATHAWAY, ROSA ACOSTA, ABIGAIL RATCHFORD, ALANA SOUZA a/k/a ALANA CAMPOS, ANDRA "ANA" CHERI MORELAND, BRENDA GEIGER, CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, JESSICA "JESSA" HINTON, LUCY PINDER, PAOLA CANAS, JESSICA BURCIAGA, SANDRA VALENCIA, JESSICA "CHARM" KILLINGS, SARA UNDERWOOD, and BROOKE MARRIN a/k/a BROOKE BANX
*By counsel*

*/s/ John V. Golaszewski*
John V. Golaszewski (#22350)
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@talentrights.law

and

*/s/ Christine A. Bondi* _____
Christine A. Bondi (#21670)
Wharton, Levin, Ehrmantraut & Klein, P.A.
10300 Eaton Place, Suite 301
Fairfax, Virginia 22030
Phone: (703) 591-9700
Fax: (703) 591-0023
cab@wlekn.com